| | |
|---|---|
| QWAN BRIMMER, JR., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | **ON INITIAL REVIEW** |
| GEORGE LNU, et al., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983, see 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 5].

## I. BACKGROUND

Pro se Plaintiff Qwan Brimmer, Jr., is a prisoner of the State of North Carolina currently incarcerated at the Mountain View Correctional Institution in Spruce Pine, North Carolina.[1] He filed this action on May 8, 2026, pursuant to 42 U.S.C. § 1983, naming the following Defendants in their individual and official capacities: George LNU, identified as a Lieutenant at the Madison County Jail (the "Jail") in Marshall, North Carolina; FNU Hensley, identified as a Corporal at the Jail; FNU Silvers, Corey LNU, Jessie LNU Shelton LNU, Chealse LNU, and Amanda LNU, all identified as Correctional Officers at the Jail. [Doc. 1].

Plaintiff alleges as follows.

---

[1] According to the North Carolina Department of Adult Correction online inmate locator, Plaintiff was born on January 2, 2007, and committed second-degree murder on March 19, 2023, when he was 16 years old. Plaintiff was convicted in Mecklenburg County, North Carolina, on January 23, 2025, after he reached majority.

Between April 2023 and January 2, 2025, while Plaintiff was a 16- and 17-year-old juvenile offender, Plaintiff was housed at the Jail, where he was subjected to verbal, emotional, and physical abuse. [Id. at 3]. Once during this time, while verbally abusing the Plaintiff with "very obscene profanity," Defendant Corey LNU tried to dislocate Plaintiff's shoulder while Defendant FNU Hensley pepper sprayed Plaintiff's face, eyes, and neck area "for no other reason than to cause [Plaintiff] harm." [Id. at 3-4]. On another occasion, Defendant Amanda LNU watched Defendants Hensley and Corey LNU physically attack the Plaintiff and failed to intervene to stop the attack. [Id. at 5].

On several occasions during this time, Plaintiff was subjected to inhumane living conditions when placed in a small detox cell with a number of other inmates. The cell had mold on the walls and feces and urine fumes so strong Plaintiff "could hardly breath at times." As punishment, Plaintiff was forced to use the bathroom in a hole on the floor, which "the officers" flushed from outside the cell. [Id. at 4].

At all relevant times, Defendant George LNU knew about the inhumane living conditions of the small detox cell and nonetheless ordered Plaintiff's placement there. [Id. at 5]. On at least one occasion, Defendant George LNU ordered Defendant Jessie LNU to place Plaintiff in the detox cell. [Id.]. On at least one occasion, Defendant Shelton LNU ordered Defendant Silvers to take Plaintiff's mattress while Plaintiff was in the detox cell, which Defendant Silvers did by pointing a taser at Plaintiff's head, causing Plaintiff to sleep on the urine- and feces-covered floor of the cell "for days at a time." [Id.]. On at least one occasion, with Plaintiff inside, Defendant Cheasle LNU, with Defendant Corey LNU at her side, opened the door to the detox cell and filled it with pepper spray, leaving Plaintiff inside "burning" and unable to breathe. [Id.].

On multiple occasions, Plaintiff was denied requested medical attention for his injuries.

2

[Id. at 6]. After Plaintiff was transferred out of the Jail, the Disability Rights North Carolina twice interviewed the Plaintiff about the treatment and living conditions of juveniles at the Jail. Based on those interviews and the conditions, juveniles were removed from the Jail. [Id. at 6].

Plaintiff purports to state claims based on the violation of his Fifth Amendment due process rights and his Fourteenth Amendment rights to due process and equal protection.[2] [Id. at 1, 7-8]. For injuries, Plaintiff alleges to have suffered from mental and emotional distress, as well as post-traumatic stress disorder. [Id. at 4]. Plaintiff seeks monetary relief only, including punitive damages. [Id. at 9].

## II.      STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

---

[2] The Court will address only those claims fairly raised by Plaintiff's Complaint.

3

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law.  See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166 (2023).

### A.     Eighth and Fourteenth Amendments

"[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated." Tate v. Parks, 791 Fed. App'x 387, 390 (4th Cir. 2019) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment." Id. (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)). "To prevail on such a claim, a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." Id. (citing Williamson, 912 F.3d at 178).

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id.  In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. (citing Graham, 490 U.S. at 396).

4

A pretrial detainee's failure to protect claim constitutes a due process claim under the Fourteenth Amendment. Farmer v. Brennan, 511 U.S. 825 (1994); Brown v. Harris, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying Farmer to a pretrial detainee's failure to protect and medical claims). A pretrial detainee states a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on the "purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate governmental purpose' or is 'excessive in relation to that purpose.'" Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)). To be sure, however, it remains insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611-12.

The Eighth Amendment, on the other hand, protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381.

To establish an Eighth Amendment excessive force claim, an inmate must also satisfy both these objective and subjective components. Williams, 77 F.3d at 761. In adjudicating such a claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

Moreover, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners and other prison officials. See Farmer, 511 U.S. at 833. Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To show deliberate indifference, the inmate "must show both (1) 'that the [prison] official in question subjectively recognized a substantial risk of harm' and (2) that the official also 'subjectively recognized' that any actions he

6

took in response 'were inappropriate in light of that risk.'" Ford v. Hooks, --- F.4th ---, 2024 WL 3260902, at *4 (Jul. 2, 2024) (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (cleaned up)). It is not enough that the prison official should have recognized the risk and the inadequacy of his response. Id. Instead, the official "actually must have perceived" both. Parrish, 372 F.3d at 302-03 ("Deliberate indifference is a very high standard," and "a showing of mere negligence will not meet it") (quoting Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)).

"While a convicted prisoner is entitled to protection only against 'cruel and unusual' punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citations omitted). Whether § 1983 claims involving conditions in juvenile detention facilities arise under the Eighth or Fourteenth Amendment, however, appears unsettled. See Alexander S. v. Boyd, 876 F.Supp. 773, 795 (D.S.C. Jan. 25, 1995) (noting that the Seventh Circuit has applied the Eighth Amendment, while the First, Ninth, Tenth, and Eleventh Circuits have applied the Due Process Clause of the Fourteenth Amendment); Morales v. Turman, 562 F.2d 993, 998 n.1 (5th Cir. 1977) ("The [E]ighth [A]mendment applies to juvenile detention centers as well as to adult prisons.").

Nonetheless, "Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40 (1977) (reserving the question whether persons involuntarily confined in juvenile institutions can claim the protection of the Eighth Amendment). In this regard, because juveniles incarcerated in North Carolina generally have not been convicted of a crime, it appears that the Due Process Clause may provide the appropriate standard. See In re Jones, 181 S.E.2d 162, 162 (N.C. Ct. App. 1971) ("Juvenile proceedings in this State are not criminal prosecutions and a finding of delinquency in a juvenile proceeding is not synonymous with the

conviction of a crime."). However, recently, a district court in Virginia concluded that the Eighth Amendment holds the proper standard for detention in a juvenile facility "because [it] necessarily constitutes punishment resulting from 'a formal adjudication of guilt in accordance with due process of law.'" Doe v. Joynes, No. 3:25CV13, 2026 WL 688279 (E.D. Va. Mar. 11, 2026) (quoting Ingraham, 430 U.S. at 671-72 n. 40). As far as the Court can tell, the Fourth Circuit has not directly addressed the question.

At this early stage of the proceedings, because the allegations of Plaintiff's pro se Complaint do not adequately inform the Court's analysis on this issue in any event, the Court will consider his claims under both the Eighth and Fourteenth Amendments.

### 1. Excessive Force and Failure to Protect

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff's claims against Defendants Corey LNU and Hensley based on the alleged use of excessive force in the form of physical violence, against Defendant Cheasle LNU based on the deployment of pepper spray, and against Defendants Amanda LNU and Corey LNU based on the alleged failure to protect Plaintiff from harm survive initial review under the Eighth and Fourteenth Amendments as not clearly frivolous.

### 2. Conditions of Confinement

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff's claims against Defendants George LNU, Jessie LNU, Shelton LNU, and Silvers based on his alleged conditions of confinement under the Fourteenth Amendment survive initial review as not clearly frivolous.

Next, taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff's claims against Defendants Shelton LNU and Silvers based on his conditions

of confinement under the Eighth Amendment survive initial review as not clearly frivolous. Plaintiff, however, has failed to state a claim for relief under the Eighth Amendment against Defendants George LNU or Jessie LNU based on his alleged conditions of confinement. That is, Plaintiff's allegations against these Defendants do not show that these Defendants inflicted harm that was "objectively, sufficiently serious to deprive a prisoner of minimal civilized necessities." Thorpe, 37 F.4th at 940. While Plaintiff alleges that Defendant George LNU knew about the alleged inhumane condition of the cell and ordered Plaintiff's placement there by Defendant Jessie LNU, Plaintiff's allegations of one such unelaborated instance are insufficient to implicate the Eighth Amendment. The Court, therefore, will dismiss Plaintiff's Eighth Amendment conditions of confinement claims against Defendants George LNU and Jessie LNU.

### 3. Equal Protection

To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state an equal protection claim. In support of his equal protection claim, he alleges only that "as a citizen [he has] a right to … be treated humanely and provided with the basic necessities of life[.]" [Doc. 1 at 8]. The Court, therefore, will dismiss this claim.

9

**B. Official Capacity Claims**

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694, 98 S.Ct. at 2037-38).

Furthermore, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Moreover, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003).

Here, Plaintiff sues all Defendants in their individual and official capacities. Plaintiff, however, has not alleged that any official policy or custom was the moving force behind any constitutional violation. Moreover, to the extent that the Defendants were acting as state officials

10

at the relevant times, Plaintiff's official capacity claims are barred. The Court, therefore, will dismiss Plaintiff's official capacity claims against all Defendants.

## C. Medical Treatment

To establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson, 912 F.3d at 171 (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171. Here, to the extent Plaintiff seeks to assert a claim based on denial of medical treatment, he has failed. That is, regardless of whether the Eighth or Fourteenth Amendment applies to this claim, Plaintiff alleges only that he was denied treatment for his injuries on multiple occasions. Plaintiff has not alleged which Defendant or Defendants, if any, were responsible for these alleged denials or any other facts illuminating this claim. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). The Court, therefore, will dismiss this claim.

## IV. CONCLUSION

In sum, the Court will allow Plaintiff's Complaint passed initial review under 28 U.S.C. § 1915A on Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Corey LNU, Hensley, and Cheasle LNU based on the use of excessive force and against Defendants Amanda LNU and Corey LNU based on the failure to protect Plaintiff from harm; on Plaintiff's Eighth Amendment claim against Defendants Shelton LNU and Silvers based on Plaintiff's conditions of

confinement; and on Plaintiff's Fourteenth Amendment claims against Defendants George LNU, Jessie LNU, Shelton LNU, and Silvers based on Plaintiff's conditions of confinement.  Plaintiff's remaining claims, including his official capacity claims, will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's individual capacity Eighth and Fourteenth Amendment claims against the Defendants as further set forth in this Order, which pass initial review.  Plaintiff's remaining claims, including his official capacity claims, are dismissed.

**IT IS FURTHER ORDERED** that Clerk is directed to mail **eight (8) blank summons forms** to Plaintiff for Plaintiff to fill out and separately identify each Defendant for service of process and then return the summonses to the Court.  Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on each Defendant.  Once the Court receives the summonses from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon the Defendants.

**IT IS SO ORDERED**.

Signed: May 18, 2026

Frank D. Whitney
Senior United States District Judge